ANNE ANDREWS (Bar No. 103280)
aandrews@andrewsthornton.com
SEAN T. HIGGINS (Bar No. 266888)
shiggins@andrewsthornton.com
ROBERT S. SIKO (Bar No. 312856)
rsiko@andrewsthornton.com
ZACHERY R. BIERSCHEID (Bar No. 351647)
zbierscheid@andrewsthornton.com
ROY BENDAVID (Bar No. 351452)
rbendavid@andrewsthornton.com
**ANDREWS & THORNTON**
4701 Von Karman Ave, Suite 300
Newport Beach, California 92660
Telephone:          (949) 748-1000
Facsimile:          (949) 315-3540

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALPHONSO HABBABA,** | **CASE NO.: 3:24-cv-00921-JLS-AHG** |
| **Plaintiff,** | **FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |
| vs. | |
| **GORILLA MIND, LLC, NUTRACAP HOLDINGS, LLC, NUTRACAP LABS, LLC, and DOES 1-500,** | 1. **NEGLIGENCE**<br>2. **STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**<br>3. **STRICT PRODUCTS LIABILITY – DESIGN DEFECT**<br>4. **STRICT PRODUCTS LIABILITY – FAILURE TO WARN**<br>5. **BREACH OF IMPLIED WARRANTIES**<br>6. **BREACH OF EXPRESS WARRANTIES** |
| **Defendants.** | |

Plaintiff ALPHONSO HABBABA, by and through his Attorneys of record, brings this First Amended Complaint against Defendants GORILLA MIND, LLC, NUTRACAP

---

1

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

HOLDINGS, LLC, NUTRACAP LABS, LLC, and DOES 1-500, and alleges on information and belief, except for information based on personal knowledge, as follows:

## **PARTIES**

1.      Plaintiff, ALPHONSO HABBABA is, and at all times herein alleged was, a resident of Spring Valley, California, County of San Diego.

2.      Defendant GORILLA MIND, LLC (hereinafter "GORILLA MIND"), is and at all times herein alleged was, a limited liability company formed in and with its principal place of business in Boise, Idaho.

3.      GORILLA MIND is and at all times herein alleged was, regularly engaged in the business of licensing, manufacturing, formulating, packaging, labeling, distributing, and/or selling, either directly or indirectly, through third parties or related entities, non-prescription dietary supplements for sale to, and use by, members of the general public, and as a part of their business, said Defendant, directly or indirectly was and is engaged in the manufacturing/ formulating/ packaging/ labeling/ distributing/ selling of purported nutritional/dietary supplements, including "a2 AM Stim-Based Fat Loss Formula" and "cAMP PM Stimulant Free Fat Loss Formula" (hereinafter, collectively referred to as "GORILLA PRODUCTS") in interstate commerce and in California, which Plaintiff purchased and ingested as alleged herein.

4.      On information and belief, GORILLA MIND at all relevant times was a multi-level marketing company that sold through authorized marketers in the state of California and sold GORILLA PRODUCTS directly to Plaintiff, located in the state of California, through its website and mailed GORILLA PRODUCTS to Plaintiff who was located in and consumed said products in California.

5.      Defendant NUTRACAP HOLDINGS, LLC, is and at all times herein alleged was, a Delaware limited liability company with its principal place of business in Norcross, Georgia.

6.      Defendant NUTRACAP LABS, LLC, is and at all times herein alleged was, a Georgia limited liability company with its principal place of business in Norcross, Georgia.

7.      NUTRACAP LABS, LLC, is and at all times herein alleged was, a subsidiary of NUTRACAP HOLDINGS, LLC, who is listed as the registered agent of NUTRACAP LABS,

2

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

LLC. At all times hereinafter alleged, "NUTRACAP" includes both NUTRACAP HOLDINGS, LLC and NUTRACAP LABS, LLC.

8.     NUTRACAP is and at all times herein alleged was, regularly engaged in the business of licensing, manufacturing, formulating, packaging, labeling, distributing, and/or selling, either directly or indirectly, through third parties or related entities, non-prescription dietary supplements for sale to, and use by, members of the general public, and as a part of their business, said Defendant, directly or indirectly was and is engaged in the manufacturing/ formulating/ packaging/ labeling/ distributing/ selling of purported nutritional/dietary supplements, including GORILLA PRODUCTS in interstate commerce and in California, which Plaintiff purchased and ingested as alleged herein.

9.     At all times relevant, NUTRACAP was contracted to assist in the manufacture, formulation, packaging, labeling, distribution, and sale of GORILLA PRODUCTS to GORILLA MIND, which were then sold directly to Plaintiff, who was located in and consumed said products in the state of California.

10.     The true names or capacities, whether individual, corporate, or otherwise, of Defendants DOES 1 through 500, inclusive, are unknown to Plaintiff who is therefore ignorant of the true names and sues said Defendants by such fictitious names. Plaintiff believes and alleges that each of the Defendants designated herein by fictitious names is in some manner legally responsible for the events and happenings herein referred to and caused damages proximately and foreseeably to Plaintiff as alleged herein. At all times hereinafter alleged, "DEFENDANTS" or "All DEFENDANTS" include named Defendants, GORILLA MIND and NUTRACAP, as well as Defendants DOES 1 through 500, inclusive.

## JURISDICTION AND VENUE

11.     Plaintiff alleges an amount in controversy in excess of the minimal jurisdictional limits of this Court.

12.     Venue in this Court is proper because the contract to purchase GORILLA PRODUCTS was entered into in this County, the consumption and injuries to Plaintiff alleged herein occurred in this County, and the dispute otherwise arose in this County.

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

13.    This Court has personal jurisdiction over DEFENDANTS who purposefully directed the sale and shipment of GORILLA PRODUCTS to Plaintiff, a resident of California, and who purposefully availed themselves of the privilege of conducting business in the state of California. Plaintiff's injuries directly arose out of the sale and shipment of GORILLA PRODUCTS by DEFENDANTS to Plaintiff. As such, this Court's exercise of personal jurisdiction over DEFENDANTS comports with fair play and substantial justice.

**FACTUAL BACKGROUND**

*Plaintiff*

14.    Before purchasing GORILLA PRODUCTS, Plaintiff was exposed to advertising and marketing by DEFENDANTS. Plaintiff relied on the representations and warranties from DEFENDANTS made therein in making his decision to purchase GORILLA PRODUCTS, believing they would be safe and effective for their advertised use and relying on the expertise of DEFENDANTS. Had Plaintiff known GORILLA PRODUCTS were not safe and not effective for their advertised use, he would not have purchased them and would not have used them.

15.    Plaintiff used GORILLA PRODUCTS as directed in the labeling as follows:

- "a2 AM Stim-Based Fat Loss Formula" in or about August 2022 until in or about October 2022.

- "cAMP PM Stimulant Free Fat Loss Formula" occasionally beginning in or about October 2022 and regularly beginning in or about July 2023 or August 2023 until his injury in or about early September 2023.

16.    In or about early September of 2023, Plaintiff began to notice signs of jaundice, discolored urination, and persistent nausea. Concerned about the symptoms, he reported to the Emergency Room on or about September 10, 2023.  Bloodwork showed extremely elevated AST and ALT levels, both of which are markers for liver failure. The medical team took a detailed history and performed appropriate diagnostic tests.  After a thorough evaluation, the medical team diagnosed that Plaintiff had drug-induced liver failure most likely caused by his use of GORILLA PRODUCTS.

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

17.     Following the recommendations of the medical team, Plaintiff consented to a liver transplant, which was performed on October 6, 2023.

18.     A liver transplant requires the use of medications with serious health trade-offs and adverse effects, including immunosuppressant drugs and steroids. Unfortunately, Plaintiff endured a number of post-surgical complications indicative of some degree of rejection of the transplanted liver. These complications required additional invasive tests, medications, and time in the hospital.

*History of Dietary Supplements Containing Green Tea Extract/EGCG*

19.     Green tea is a tea made from camellia sinensis leaves. It contains many phytochemicals, including polyphenol epigallocatechin-3-gallate (EGCG) as well as numerous other polyphenols, which together account for about 30% of the total dry weight of green tea leaves. Although EGCG is the most abundant polyphenol in green tea, it is present in small amounts. Thus, green tea is also extracted. Commercial preparations of green tea extracts use various extraction techniques, although alcohol is frequently used as a solvent. Regardless of technique, generally, as an extract, EGCG is the most abundant polyphenol at about 10%.

20.     However, GORILLA PRODUCTS each contain 125 mg Green Tea Extract per gel capsule. Given the dosing instructions of 8 capsules per day, and as reflected by the images below, the DEFENDANTS' recommended daily dose of green tea extract in GORILLA PRODUCTS is an astounding 1,000 mg.

21.     However, DEFENDANTS' use of green tea extract is even worse than the mere numbers suggest. Although EGCG is the most abundant polyphenol, it is present in green tea leaves at only 7% and extracts at 10%. As a result, the amount of raw green tea leaves necessary to extract the EGCG in each pill of GORILLA PRODUCTS would be large, likely meaning DEFENDANTS sold synthetic EGCG in GORILLA PRODUCTS.

22.     Under California law, the use of synthetic ingredients like EGCG in dietary supplements is illegal. The reason is that synthetic copies of natural ingredients are not always the same as their natural counterparts, may present different risk profiles, and, as evident here, are often present in much larger amounts than those found in nature. The dietary supplement industry

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

was warned of such back in 2011 and it has long since been known in the industry. DEFENDANTS knew that use of synthetic EGCG was unlawful.

23.    While green tea is a drink that has been consumed around the world for centuries, about 20 years ago dietary supplement companies starting selling products marketed for weight loss not with natural green tea leaves, but the extract of green tea, with synthetic EGCG alone or both. In 1999, reports began to appear in literature of liver toxicity caused by products containing green tea extract.

24.    In April 2003, the French and Spanish regulatory authorities suspended the market authorization of a weight-loss supplement, Exolise, containing green tea extract following 13 reports of liver injury, including 4 serious injuries and a liver transplantation.

25.    In 2008, an expert committee to U.S. Pharmacopeia reviewed 34 case reports of liver injuries from green tea products. All were categorized as possibly or probably caused by the green tea products.

26.    On May 1, 2009, FDA warned consumers to stop using a line of dietary supplements marketed as a weight-loss product called Hydroxycut because they were associated with serious health problems. Hydroxycut contained EGCG at far less than the dose of SUBJECT PRODUCT. FDA noted it had received numerous adverse event reports, including 23 reports of liver toxicity, ranging from mild liver dysfunction to liver failure and transplantation. A case series from University of Southern California revealed 17 additional cases of liver toxicity from Hydroxycut. The company marketing Hydroxycut eventually agreed to a full recall of the entire line of products.

27.    Since the late 1990s there have been scores of cases reports in the scientific and medical literature of acute liver injury caused by green tea extracts contained in dietary supplements. The Drug-Induced Liver Injury Network (DILIN), the premier expert panel of hepatologists reviewing cases of drug and herbal-induced liver injury, opine that EGCG is hepatotoxic.

///

///

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

*Gorilla Mind Products*

28.    GORILLA PRODUCTS are labeled as a "Fat Loss Formula" and a "Stimulant Free Fat Loss Formula". They are manufactured for, advertised, distributed, marketed, and sold by DEFENDANTS to Plaintiff. An advertisement displaying a picture of the front labels of GORILLA PRODUCTS is reproduced below:



29.    It is well established by reliable scientific evidence that Green Tea extracts can cause liver injury.  Though drinking traditional green tea has not been shown to cause liver injury, green tea extracts have been reliably shown to cause hepatotoxic liver injury in susceptible users. Each of the GORILLA PRODUCTS contained synthetic EGCG as well as multiple extracts that are metabolized in the liver, including, coleus forskhoklii extract ("Forskolin"), and grains of paradise seed extract ("Paradoxine"). An image of the ingredient label for each GORILLA PRODUCTS is reproduced below:

///

///

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## cAMP PM STIM-FREE FAT LOSS FORMULA

### Supplement Facts

Serving Size 2 Capsules
Servings per container 60

| 2 Capsules | Amount per serving | %DV | 4 Capsules | Amount per serving | %DV |
|---|---|---|---|---|---|
| Naringin | 300mg | † | Naringin | 600mg | † |
| Hesperidin | 280mg | † | Hesperidin | 560mg | † |
| (Citrus Bioflavonoids standardized to 90% Hesperidin) | | | (Citrus Bioflavonoids standardized to 90% Hesperidin) | | |
| Green Tea Extract | 250mg | † | Green Tea Extract | 500mg | † |
| (standardized to > 98% Polyphenols, > 80% Catechins, > 50% EGCG, < 2% Caffeine) | | | (standardized to > 98% Polyphenols, > 80% Catechins, > 50% EGCG, < 2% Caffeine) | | |
| Forskolin | 125mg | † | Forskolin | 250mg | † |
| (Coleus Forskohlii Extract standardized to 20% Forskolin) | | | (Coleus Forskohlii Extract standardized to 20% Forskolin) | | |
| Paradoxine® | 25mg | † | Paradoxine® | 50mg | † |
| (Grains Of Paradise Seed Extract standardized to 12.5% 6-Paradol) | | | (Grains Of Paradise Seed Extract standardized to 12.5% 6-Paradol) | | |

† Daily Value Not Established

**Other Ingredients:** Gelatin (capsules), Titanium Dioxide, FD&C Yellow #6, FD&C Red #3, Silicon Dioxide, Magnesium Stearate

## a2AM STIM-BASED FAT LOSS FORMULA

### Supplement Facts

Serving Size 2 Capsules
Servings per container 60

| 2 Capsules | Amount per serving | %DV | 4 Capsules | Amount per serving | %DV |
|---|---|---|---|---|---|
| Naringin | 300mg | † | Naringin | 600mg | † |
| Hesperidin | 280mg | † | Hesperidin | 560mg | † |
| (Citrus Bioflavonoids standardized to 90% Hesperidin) | | | (Citrus Bioflavonoids standardized to 90% Hesperidin) | | |
| Green Tea Extract | 250mg | † | Green Tea Extract | 500mg | † |
| (standardized to ≥ 98% Polyphenols, ≥ 80% Catechins, ≥ 50% EGCG, ≤ 2% Caffeine) | | | (standardized to ≥ 98% Polyphenols, ≥ 80% Catechins, ≥ 50% EGCG, ≤ 2% Caffeine) | | |
| Caffeine Anhydrous | 150mg | † | Caffeine Anhydrous | 300mg | † |
| N-Phenethyl Dimethylamine Citrate | 150mg | † | N-Phenethyl Dimethylamine Citrate | 300mg | † |
| Forskolin | 125mg | † | Forskolin | 250mg | † |
| (Coleus Forskohlii Extract standardized to 20% Forskolin) | | | (Coleus Forskohlii Extract standardized to 20% Forskolin) | | |
| Paradoxine® | 25mg | † | Paradoxine® | 50mg | † |
| (Grains of Paradise Seed Extract standardized to 12.5% 6-Paradol) | | | (Grains of Paradise Seed Extract standardized to 12.5% 6-Paradol) | | |
| Theophylline | 20mg | † | Theophylline | 40mg | † |
| Isopropylnorsynephrine | 12.5mg | † | Isopropylnorsynephrine | 25mg | † |
| Bioperine® (Black Pepper Fruit Extract) (standardized to 95% Piperine) | 2.5mg | † | Bioperine® (Black Pepper Fruit Extract) (standardized to 95% Piperine) | 5mg | † |
| Rauwolscine (Rauwolfia Vomitoria Root Extract) (std. Min 90% Alpha Yohimbine) | 1.5mg | † | Rauwolscine (Rauwolfia Vomitoria Root Extract) (std. Min 90% Alpha Yohimbine) | 3mg | † |

† Daily Value Not Established

**Other Ingredients:** Gelatin (capsules), Titanium Dioxide, FD&C Yellow #5, FD&C Yellow #6, Silicon Dioxide, Magnesium Stearate

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

30.     DEFENDANTS, and each of them, knew or in the exercise of reasonable care should have known that EGCG is a hepatotoxic phytochemical. The controversy over green tea extract and EGCG's role in causing acute liver injuries was beyond controversy by the time DEFENDANTS sold GORILLA PRODUCTS to Plaintiff. They marketed GORILLA PRODUCTS as safe, despite the fact that not only did GORILLA PRODUCTS contain a known hepatotoxin, but they contained a synthetic hepatotoxin at astronomical levels never before seen in other recalled supplements causing liver injury.

31.     On information and belief, at no time did DEFENDANTS undertake any type of scientific or clinical testing of GORILLA PRODUCTS to determine whether they were safe for human consumption.

32.     DEFENDANTS further marketed the GORILLA PRODUCTS as effective for weight loss by labeling them as "Fat Loss Formulas", that each of GORILLA PRODUCTS "Suppresses Appetite", and promise "Increased Fat Loss." Despite all of these and other warranties and representations that GORILLA PRODUCTS will help with weight loss, there is no evidence that Green Tea Extract or EGCG is effective in sustained and significant weight loss. On information and belief, DEFENDANTS have not even attempted to run clinical trials or research to determine for themselves whether Green Tea Extract, EGCG or GORILLA PRODUCTS are effective for weight loss.

33.     GORILLA PRODUCTS provided limited Warnings: "KEEP OUT OF REACH OF CHILDREN. This product should not be taken by individuals who are pregnant, nursing, have or suspect a medical condition, are taking any medications, or are under 18 years of age. Consult a physician before taking this or any other dietary supplement. Do not use this product with alcohol, or other medications. Store in a cool, dry place." DEFENDANTS did not provide any information to users, such as Plaintiff, that green tea extracts have been scientifically known to be hepatotoxic for susceptible patients with the potential danger of causing liver failure and death.  An image of the side label of GORILLA PRODUCTS is reproduced below:

///

///

9

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

34.    If Plaintiff had been warned that green tea extracts can cause liver failure and potentially cause death, he would not have used GORILLA PRODUCTS, because the potential danger outweighed the uncertain benefits from taking green tea extracts.

**CAUSES OF ACTION**

**COUNT I – NEGLIGENCE**

**(As to All DEFENDANTS)**

35.    Plaintiff incorporates by reference paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36.    At all times herein mentioned, DEFENDANTS had a duty to exercise reasonable care in the research, development, testing for safety, formulation, manufacture, scientific risk assessment, labeling, packaging, promotion, advertising, marketing, distribution, sale, and otherwise releasing into the stream of commerce GORILLA PRODUCTS.

37.    DEFENDANTS breached their duty of reasonable care to Plaintiff, in that they negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled and/or sold GORILLA PRODUCTS. Specifically, DEFENDANTS failed to

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

exercise reasonable care in ways which included, but were not limited to, one or more of the following particulars:

a. In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiff, herein, of the dangerous and defective characteristics of GORILLA PRODUCTS;

b. In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiff, of the propensity of GORILLA PRODUCTS to cause side effects, serious injury and death, specifically of the propensity to cause acute liver injuries such as liver failure;

c. In representing that GORILLA PRODUCTS were safe and effective for their intended use when, in fact, the products were unsafe for their intended use;

d. In failing to perform appropriate, reliable and valid pre-market testing for safety of GORILLA PRODUCTS;

e. In failing to perform appropriate, reliable and valid pre-market testing for safety, contamination, or purity of GORILLA PRODUCTS;

f. In failing to perform appropriate post-market surveillance of GORILLA PRODUCTS;

g. In failing to adequately and properly disclose to consumers and to Plaintiff, adverse events received from FDA by users of GORILLA PRODUCTS, as well as failing to disclose the French and Spanish recalls of green tea products, the recall of Hydroxycut in 2009, and the extensive medical and scientific literature on the hepatotoxicity of EGCG and green tea extract;

h. In failing to monitor or require sterile and good manufacturing processes of GORILLA PRODUCTS;

i. In failing to adequately represent the lack of research conducted on GORILLA PRODUCTS; and

j. In failing to perform appropriate post-market surveillance of GORILLA PRODUCTS.

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

38.    DEFENDANTS knew or should have known that consumers, such as Plaintiff, would foreseeably suffer injury as a result of the DEFENDANTS' failure to exercise reasonable and ordinary care.

39.    As a direct and proximate result of the DEFENDANTS' carelessness and negligence, and of the unreasonably dangerous and defective characteristics of GORILLA PRODUCTS, Plaintiff, suffered severe and permanent injuries. Plaintiff, endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiff, incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise physically, emotionally, and economically injured. Plaintiff, suffered severe pecuniary loss. Plaintiff, seeks actual and punitive damages from the DEFENDANTS as alleged herein. The injuries and damages alleged herein are permanent and will continue into the future.

## COUNT II - STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

### (As to All DEFENDANTS)

40.    Plaintiff incorporates by reference paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41.    At all times material to this action, DEFENDANTS were responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling, directly and indirectly, through third parties or related entities the dietary supplement GORILLA PRODUCTS, which were defective and unreasonably dangerous to users and/or consumers of the products, including Plaintiff.

42.    At all times material to this action, GORILLA PRODUCTS were manufactured, distributed, and/or sold by DEFENDANTS in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:

a.    When placed in the stream of commerce, GORILLA PRODUCTS were of a substandard condition in that they contained contaminants which were not intended to be a part of the product which rendered the products unreasonably dangerous when used for their intended and foreseeable purpose;

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

b.  When placed in the stream of commerce, GORILLA PRODUCTS were of a substandard condition in that they contained unintended or incorrect ratios or quantities of ingredients which rendered the products unreasonably dangerous when used for their intended and foreseeable purpose; and/or

c.  When placed in the stream of commerce, GORILLA PRODUCTS were of a substandard condition in that they contained contaminants which were not intended to be a part of the products which rendered the products unreasonably dangerous and which caused them to differ from other ostensibly identical units of the same product line.

43.  In light of the potential and actual risk of harm associated with the products' use, a reasonable consumer who had actual knowledge of this potential risk of harm would have expected that GORILLA PRODUCTS should not have been marketed in that condition.

44.  At all times relevant herein, DEFENDANTS knew that GORILLA PRODUCTS would be purchased by members of the general public and would be used by such purchasers without a prescription and without any inspections for defects, and who would rely upon the representations made by DEFENDANTS on the product label and in their marketing including public statements and promotional and sales materials.

45.  At all times material to this action, GORILLA PRODUCTS were expected to reach, and did reach, consumers in the State of California and throughout the world including Plaintiff, without substantial change in the condition in which they were sold.

46.  DEFENDANTS knew or should have known of the defective nature of GORILLA PRODUCTS but continued to develop, design, manufacture, package, formulate, inspect, label, distribute, market, promote, sell and otherwise release these products into the stream of commerce so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by their supplements, including liver injury and other health problems.

47.  At all times, Plaintiff used GORILLA PRODUCTS for their intended or reasonably foreseeable purpose.

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

48.     As a direct and proximate result of the defective and unreasonably dangerous condition of GORILLA PRODUCTS and of their failure to perform safely, Plaintiff, suffered severe and permanent injuries. Plaintiff, endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiff, incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise physically, emotionally, and economically injured. Plaintiff, suffered severe pecuniary loss.  Plaintiff, seeks actual damages and treble and/or punitive damages from DEFENDANTS as alleged herein. The injuries and damages alleged herein are permanent and will continue into the future.

## COUNT III - STRICT PRODUCTS LIABILITY – DESIGN DEFECT

### (As to All DEFENDANTS)

49.     Plaintiff incorporates by reference paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50.     At all times material to this action, DEFENDANTS were responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling, directly and indirectly, through third parties or related entities the dietary supplement GORILLA PRODUCTS, which were defective and unreasonably dangerous to users and/or consumers of the products, including Plaintiff.

51.     At all times material to this action, GORILLA PRODUCTS were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by DEFENDANTS in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:.

a.  When placed in the stream of commerce, GORILLA PRODUCTS were defectively designed, because they were unreasonably dangerous, not reasonably safe and fit for their intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the products, including Plaintiff, to risks which exceeded the benefits of the products;

b.  The products did not perform as safely as an ordinary consumer would have expected them to perform when used in an intended or reasonably foreseeable way;

14

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

c.  The products were insufficiently tested;

d.  The products caused harmful side effects that outweighed any potential utility;

e.  The products were more dangerous than other dietary supplements on the market; and

f.  The products were not accompanied by adequate labeling or instructions for use to fully apprise the public and consumers, including Plaintiff, of the potential risks and serious side effects associated with their use.

52.    In light of the potential and actual risk of harm associated with the products' use, a reasonable consumer who had actual knowledge of this potential risk of harm would have expected that GORILLA PRODUCTS should not have been marketed in the condition in which they were sold.

53.    There existed safer alternative designs, but DEFENDANTS, chose to market a more dangerous design.

54.    At all times relevant herein, DEFENDANTS knew that GORILLA PRODUCTS would be purchased by members of the general public and would be used by such purchasers without a prescription and without any inspections for defects, and would rely upon the representations made by DEFENDANTS on the products' label and in their marketing including public statements and promotional and sales materials.

55.    At all times material to this action, GORILLA PRODUCTS were expected to reach, and did reach, consumers in the State of California and throughout the United States, including Plaintiff, without substantial change in the condition in which they were sold.

56.    DEFENDANTS knew or should have known of the defective nature of GORILLA PRODUCTS but continued to develop, design, manufacture, package, formulate, inspect, label, distribute, market, promote, sell and otherwise release these products into the stream of commerce so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by their products, including liver conditions and other health problems.

57.    At all times, Plaintiff used GORILLA PRODUCTS for their intended or reasonably foreseeable purpose as dietary supplements.

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

58.     As a direct and proximate result of the defective and unreasonably dangerous condition of GORILLA PRODUCTS and of their failure to perform safely, Plaintiff suffered severe and permanent injuries. Plaintiff endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise physically, emotionally, and economically injured. Plaintiff suffered severe pecuniary loss.  The injuries and damages alleged herein are permanent and will continue into the future.

## COUNT IV - STRICT PRODUCTS LIABILITY – FAILURE TO WARN

### (As to All DEFENDANTS)

59.     Plaintiff incorporates by reference paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60.     At all times material to this action, DEFENDANTS were responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling, directly and indirectly, through third parties or related entities the dietary supplement GORILLA PRODUCTS, which were defective and unreasonably dangerous to users and/or consumers of the products, including Plaintiff.

61.     At all times material to this action, GORILLA PRODUCTS were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by DEFENDANTS in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:

a.  They contained warnings insufficient to alert consumers, including Plaintiff, herein, of the dangerous risks and reactions associated with GORILLA PRODUCTS, and the comparative severity, duration and the extent of the risks and reactions;

b.  They contained warnings insufficient to alert consumers, including Plaintiff, herein, of the propensity to cause a substantial increased risk of serious bodily harm, specifically including but not limited to hepatitis, liver dysfunction, liver failure or other liver injuries, even in those with no known history of liver problems;

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

c. They contained warnings insufficient to alert consumers, including Plaintiff, of the dangerous drug-drug interactions and food-drug interactions; and

d. The warnings that were given by the DEFENDANTS were not accurate, clear, and/or were ambiguous.

62. Plaintiff could not have discovered any defect in GORILLA PRODUCTS through the exercise of reasonable care.

63. DEFENDANTS, as a manufacturer, seller and/or distributor of GORILLA PRODUCTS, are held to the level of knowledge of an expert in the field.

64. Plaintiff reasonably relied on the skill, superior knowledge, and judgment of DEFENDANTS.

65. DEFENDANTS had a continuing duty to warn the Plaintiff of the dangers associated with the use of GORILLA PRODUCTS.

66. Plaintiff consumed and used GORILLA PRODUCTS for their intended purpose as a dietary supplement.

67. Had Plaintiff received adequate warnings regarding the risks of GORILLA PRODUCTS, Plaintiff would not have used any of them.

68. As a direct and proximate result of the defective and inappropriate warnings and the unreasonably dangerous and defective characteristics of GORILLA PRODUCTS, Plaintiff suffered severe and permanent injuries. Plaintiff endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise physically, emotionally, and economically injured. Plaintiff suffered severe pecuniary loss.  The injuries and damages alleged herein are permanent and will continue into the future.

## COUNT V - BREACH OF IMPLIED WARRANTIES

### (As to All DEFENDANTS)

69. Plaintiff incorporates by reference paragraphs 1 through 68 of this Complaint as if fully set forth herein.

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

70.    At all times, DEFENDANTS impliedly warranted that GORILLA PRODUCTS were safe, effective and fit for use by consumers and users, including Plaintiff, for their intended use, that they were of merchantable quality, that they did not produce dangerous side effects, and that they were adequately tested and fit for their intended purpose. Specifically, DEFENDANTS represented on GORILLA PRODUCTS' labels, inserts and through advertising that each of GORILLA PRODUCTS "suppresses appetite", leads to "increased fat loss", and causes "no jitters."

71.    DEFENDANTS' representations regarding the character or quality of GORILLA PRODUCTS were false, in that GORILLA PRODUCTS were not safe, effective and fit for their intended purpose, were not of merchantable quality, and, in fact, caused serious and potentially lethal side effects to consumers, including Plaintiff, when taken in their recommended dose.

72.    At the time of making these warranties, DEFENDANTS knew or should have known that, in fact, the representations and warranties were false, misleading, and untrue in that GORILLA PRODUCTS were not safe, effective and fit for use by consumers and users, including Plaintiff, for their intended use, that they were not of merchantable quality, that they did produce dangerous side effects, and that they were not adequately tested or fit for their intended purpose.

73.    With such knowledge, DEFENDANTS, who owed a duty to the public and Plaintiff, concealed and suppressed such information from Plaintiff and the public.

74.    DEFENDANTS made the foregoing representations and warranties without any reasonable ground for believing them to be true. In supplying the false information, DEFENDANTS failed to exercise reasonable care in labeling, promoting, and advertising GORILLA PRODUCTS. Moreover, DEFENDANTS intentionally deceived and defrauded Plaintiff and the public with intent to induce reliance on the representations and warranties.

75.    Plaintiff reasonably relied, to his detriment, upon the DEFENDANTS' actions, concealment, and omissions in their representations and warranties concerning the risks, safety, and effectiveness of GORILLA PRODUCTS; specifically, that GORILLA PRODUCTS were safe and effective for human consumption.

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

76.    Had Plaintiff, received adequate warnings regarding the risks, safety, and effectiveness of GORILLA PRODUCTS, he would not have used them.

77.    As a direct and proximate result of the DEFENDANTS' misrepresentations and concealment, and the unreasonably dangerous and defective characteristics of GORILLA PRODUCTS, Plaintiff suffered injuries as set forth above.

### COUNT VI - BREACH OF EXPRESS WARRANTIES

### (As to Defendant GORILLA MIND and DOES 1-500)

78.    Plaintiff incorporates by reference paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79.    At all times relevant, GORILLA MIND and DOES 1-500 expressly warranted that GORILLA PRODUCTS were safe, effective and fit for use by consumers and users, including Plaintiff, for their intended use, that they were of merchantable quality, that they did not produce dangerous side effects, that they were made from natural ingredients (i.e. green tea leaves), and that they were adequately tested and fit for their intended purpose. Specifically, GORILLA MIND and DOES 1-500 represented on the bottle and through their advertising:

a.    GORILLA PRODUCTS are "Fat Loss Formulas";

b.    GORILLA PRODUCTS, each, "Suppresses Appetite";

c.    GORILLA PRODUCTS, each, "Increased Fat Loss";

d.    By taking GORILLA PRODUCTS, users could achieve "Optimal Fat Loss";

e.    GORILLA PRODUCTS "provide a substantially higher level of fat loss and appetite suppression."

f.    GORILLA PRODUCTS contain "Green Tea Extract ( . . . >50% EGCG)";

80.    At the time of making these and other warranties with respect to the safety, efficacy, testing, and characteristics of GORILLA PRODUCTS, GORILLA MIND and DOES 1-500 knew or should have known that despite the above and other warranties alleged herein:

a.    In fact, GORILLA PRODUCTS will not and have not been shown to cause "Increased Fat Loss";

b.    GORILLA PRODUCTS will not and have not been shown to burn fat;

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

c.  GORILLA PRODUCTS do not suppress appetite;

d.  By taking GORILLA PRODUCTS, users could not achieve "Optimal Fat Loss";

e.  GORILLA PRODUCTS do not "provide a substantially higher level of fat loss and appetite suppression."

f.  GORILLA PRODUCTS contain EGCG which is not extracted from green tea leaves but rather is synthetic;

g.  GORILLA PRODUCTS will not help consumers or Plaintiff achieve their weight loss goals.

81.    At the time of making these warranties and other similar warranties, GORILLA MIND and DOES 1-500 knew or should have known that, in fact, the representations and warranties were false, misleading, and untrue in that GORILLA PRODUCTS were not safe, effective and fit for use by consumers and users, including Plaintiff, for their intended use, that they were not of merchantable quality, that they did produce dangerous side effects, and that they were not adequately tested or fit for their intended purpose.

82.    Plaintiff reasonably relied upon the skill and judgment of GORILLA MIND and DOES 1-500 and upon said express warranties in using GORILLA PRODUCTS. As a result, Plaintiff used GORILLA PRODUCTS for their intended purpose.

83.    GORILLA MIND and DOES 1-500 breached said express warranties, in that, GORILLA PRODUCTS were not safe, effective and fit for their intended purpose, were not of merchantable quality, and in fact, caused serious and potentially lethal side effects to consumers, including Plaintiff, when taken in its recommended dose.

84.    Due to GORILLA MIND and DOES 1-500's wrongful conduct, as alleged herein, Plaintiff could not have known about the nature of the risks and side effects associated with GORILLA PRODUCTS until after he used them.

85.    As a direct and proximate result of the GORILLA MIND and DOES 1-500's misrepresentations and concealment, and the unreasonably dangerous and defective characteristics of GORILLA PRODUCTS, Plaintiff suffered injuries as set forth above.

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as to all Counts and all DEFENDANTS as follows:

1. Damages, including as applicable:

  a. Past and future medical expenses;

  b. Past and future loss of earnings (and/or profits); and

  c. Other economic loss;

2. Non-economic damages, including as applicable:

  a. Compensation for physical pain and discomfort; and

  b. Compensation for fright, nervousness, anxiety, worry, and apprehension.

3. Pre-judgment interest.

4. Post-judgment interest.

5. Plaintiff's costs and expenses for litigation.

6. Attorneys' fees.

7. All other such relief as the Court deems necessary, just, and proper.

## **JURY DEMAND**

Plaintiff, ALPHONSO HABBABA, demands a trial by jury on all issues so triable.

DATED: October 28, 2024     **ANDREWS & THORNTON**

          /s/ *Zachery R. Bierscheid*
          ZACHERY R. BIERSCHEID
          4701 Von Karman Ave., Suite 300
          Newport Beach, CA 92660
          Tel (949) 748-1000
          Fax (949) 315-3540
          zbierscheid@andrewsthornton.com

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on October 28, 2024, I served a true and accurate copy of the following: **FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL; (FIRST AMENDED) SUMMONS AS TO NUTRACAP HOLDINGS, LLC; (FIRST AMENDED) SUMMONS AS TO NUTRACAP LABS, LLC;** electronically with the Clerk of Court via the CM/ECF system which sent electronic notification of this filing to all registered counsel of record via email.

DATED: Newport Beach, California, October 28, 2024.

*/s/ Zachery R. Bierscheid*
Zachery R. Bierscheid, Esq.

**PROOF OF SERVICE**