UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHONSO HABBABA,<br><br>          Plaintiff,<br><br>v.<br><br>GORILLA MIND, LLC; NUTRACAP HOLDINGS, LLC; NUTRACAP LABS, LLC; AND DOES 1–500,<br><br>          Defendants. | Case No.: 24-CV-921 JLS (AHG)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT NUTRACAP LABS, LLC'S MOTION TO DIMISS FOR LACK OF JURISDICTION AND**<br><br>**(2) DENYING DEFENDANT NUTRACAP HOLDINGS, LLC'S MOTION TO DISMISS FOR LACK OF JURISDICTION WITHOUT PREJUDICE IN LIGHT OF AUTOMATIC BANKRUPTCY STAY**<br><br>(ECF Nos. 28, 29) |

   Presently before the Court are Defendant Nutracap Labs, LLC's ("Labs") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Labs Mot.," ECF No. 29) and Memorandum of Points and Authorities in Support Thereof ("Labs Mem.," ECF No. 29-1). Also before the Court are Plaintiff Alphonso Habbaba's ("Plaintiff") Opposition ("Opp'n," ECF No. 33) and Labs' Reply thereto ("Reply," ECF No. 40).

   Defendant Nutracap Holdings, LLC's ("Holdings") also filed a Motion to Dismiss

1

Pursuant to Federal Rule of Civil Procedure 12(b)(2), which Plaintiff opposed. *See* ECF Nos. 28, 32. Subsequently, the Court received a Notification of Bankruptcy Filing and Automatic Stay as to Nutracap Holdings, LLC ("Bankr. Notice," ECF No. 39).

The Court took the matters under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 38. Having carefully reviewed Plaintiff's First Amended Complaint ("FAC," ECF No. 17), the Parties' arguments, and the law, the Court rules as follows.

## BACKGROUND

### I. Procedural Background

Plaintiff initiated the present matter by filing his original Complaint on March 11, 2024, in the Superior Court of California, County of San Diego, against Defendants Gorilla Mind, LLC ("Gorilla") and Does 1–500. *See* ECF No. 1, Exhibit A. Gorilla removed the action to this Court on May 24, 2024. *See* ECF No. 1. On October 14, 2024, the Court received a Joint Motion to Amend/Correct to Add Parties which the Court subsequently granted. *See* ECF No. 15. On October 28, 2024, Plaintiff filed his FAC, which added Holdings and Labs as Defendants. *See* FAC. In the FAC, Plaintiff raises claims of negligence, strict products liability, and breach of implied warranties against Holdings and Labs.[1] *See generally id.*

On November 15, 2024, Defendant Gorilla filed an Answer to the Amended Complaint. *See* ECF No. 22. On December 11, 2024, Labs and Holdings filed the instant Motions to Dismiss.

### II. Factual Background

Plaintiff—a resident of Spring Valley, California—alleges he relied on Defendants Gorilla, Holdings, and Labs' (collectively, "Defendants") representations and warranties in making his decisions to purchase purported nutritional/dietary supplements ("Gorilla

---

[1] Plaintiff also raises a claim of breach of express warranties, but this claim is only as to Defendants Gorilla and Does 1–500. FAC at 19.

Products"), "believing they would be safe and effective for their advertised use and relying on the expertise of the [Defendants]." FAC ¶¶ 1, 14. He alleges Defendants marketed Gorilla Products as safe despite the fact that they contained a known hepatotoxin and "a synthetic hepatotoxin at astronomical levels never before seen in other recalled supplements causing liver injury." *Id.* ¶ 30. Plaintiff alleges he began using Gorilla Products in August 2022, and in September 2023, he experienced drug-induced liver failure that was most likely caused by his use of Defendants' products. *Id.* ¶¶ 15–16.

Plaintiff groups Labs and Holdings together in his FAC as "Nutracap" and alleges "Nutracap" was contracted to assist in the manufacture, formulation, packaging, labeling, distribution, and sale of Gorilla Products to Gorilla. *Id.* ¶ 9. He alleges Gorilla then sold Gorilla Products directly to Plaintiff, through its website, and mailed Gorilla Products to Plaintiff, who was located in and consumed said products in California. *Id.* ¶ 4.

Defendant Labs is incorporated in Georgia and has its principal place of business in Norcross, Georgia. *Id.* ¶ 6. Defendant Holdings is incorporated in Delaware and also has its principal place of business in Norcross, Georgia. *Id.* ¶ 7.

Labs, in support of its Motion, attached a Declaration of John Wesley Houser, IV ("Mr. Houser") ("Houser Decl.," ECF No. 29-2). And Plaintiff, in support of his Opposition, attached a Declaration of his counsel, Roy BenDavid ("Mr. BenDavid"). ("BenDavid Decl.," ECF No. 33-1). With its Reply, Labs attached a Second Declaration of Mr. Houser ("Second Houser Decl.," ECF No. 40-1).

## DEFENDANT LABS' MOTION TO DISMISS

In its Motion, Labs seeks to dismiss Plaintiff's claims against it for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). *See* Labs Mot. at 1.

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) allows for a responding party to move for an action to be dismissed due to a lack of personal jurisdiction. "A court's power to exercise jurisdiction over a party is limited by both statutory and constitutional considerations." *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118,

1135 (S.D. Cal. 2018). In this case, those considerations are one and the same. *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution.").

The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution requires that a defendant "have certain minimum contacts with [a forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington, Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Courts have personal jurisdiction over a party where they have either general or specific jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (citing *Int'l Shoe*, 326 U.S. at 317). Specific jurisdiction relies on an "'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (citations omitted). Furthermore, specific jurisdiction is more limited than general jurisdiction as it "is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (internal quotation omitted).

Plaintiff has the burden of establishing that jurisdiction is proper. *CollegeSource, Inc. v. AcademyOne Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). "Where . . . the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023) (quoting *CollegeSource*, 653 F.3d at 1073)). Furthermore, "[u]ncontroverted allegations in the complaint are taken

as true, but in the face of a contradictory affidavit, the 'plaintiff cannot simply rest on the bare allegations of its complaint.'" *Id.* (quoting *Mavrix Photo Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

**II.     Analysis**

The Court must make a finding as to whether Plaintiff has made a prima facie showing of jurisdictional facts to withstand Labs' Motion. Thus, the Court first considers whether a showing has been made as to either general or specific jurisdiction.

    **A.     *General Jurisdiction***

The Court preliminarily disposes of the issue of whether it may exercise general jurisdiction over Labs. To determine this, the Court turns to the question of whether Labs is "at home" in California. *Daimler AG*, 571 U.S. at 122 (citation omitted). The paradigm forums in which a corporation is found to be "at home" are the forums where a corporation is incorporated and where it has its principal place of business. *Id.* at 137 (citing *Goodyear* 564 U.S. at 924). Labs is incorporated and has its principal place of business in Georgia. FAC ¶ 6. This indicates that it is not "at home" in California.

Courts may also find that a defendant is "at home" in a forum other than the place of incorporation and principal place of business, where a defendant is "so heavily engaged in activity [in the forum] 'as to render [it] essentially at home' in that State." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017) (citation omitted). Plaintiff does not appear to argue, much less demonstrate that Labs is "so heavily engaged in activity" in California. Therefore, the Court finds Plaintiff has not shown general jurisdiction exists over Labs.

    **B.     *Specific Jurisdiction***

In order to determine whether specific jurisdiction may be exercised over a non-resident defendant, courts in the Ninth Circuit turn to the following three prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or

> resident thereof; *or* perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related-activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Dole Food Co.*, 303 F.3d at 1111 (citations omitted). The burden of satisfying the first two prongs belongs to Plaintiff, and "if the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum State." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted) (cleaned up). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (2006)).

### 1. Purposeful Direction or Purposeful Availment

"Purposeful direction" and "purposeful availment" encompass two distinct concepts. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023) (citing *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020)). Courts generally use the purposeful availment analysis "for unintentional tort claims" or for "suits sounding in contract." *Id.* (citations omitted). In contrast, a purposeful direction analysis is generally used in suits where "claims require[] an intentional tortious or 'tort-like' act." *Id.* (citing *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021)). While these two tests are distinct, the Ninth Circuit has provided that, "when considering specific jurisdiction, courts should comprehensively evaluate the extent of the defendant's contacts with the forum state and those contacts' relationship to the plaintiff's claims—which may mean looking at both purposeful availment and purposeful direction." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023).

Given that the present lawsuit involves unintentional tort claims, *see generally* FAC, the Court first conducts a purposeful availment analysis.

a. Purposeful Availment

For a party to have purposefully availed themselves of the laws of a forum state, "they must have 'deliberately reached out beyond [their] home[s]—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there.'" *Yamashita*, 62 F.4th at 503 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)). Courts in the Ninth Circuit employ the "stream-of-commerce-plus test" which provides that "'[t]he placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state,' even if the defendant is 'aware[] that the stream of commerce may or will sweep the product into the forum state.'" *Id.* (citations omitted).

Labs argues that it has not purposefully availed itself of the privilege of conducting business in California. In furtherance of its argument, Labs states that it "did not conduct relevant contractual activities within California and did not, thereby, invoke the privilege or protection of California law." Labs Mem. at 9. In Labs' attached Declaration, Mr. Houser attests that Labs "did not sell or ship the Gorilla Products to Plaintiff in California or otherwise ship or sell Gorilla Products to California at all." Houser Decl. ¶ 8. Moreover, Labs "did not sell any products manufactured for Gorilla direct to consumers, as any and all products manufactured by [Labs] for Gorilla were sold solely to Gorilla and shipped directly to Gorilla in Idaho." *Id.* ¶ 9. Mr. Houser attests that any and all of Labs' business activities were performed in Georgia and Labs neither "advertise[d] products manufactured for Gorilla in California or elsewhere and did not provide any customer support for Gorilla product consumers in California or elsewhere." *Id.* ¶¶ 10, 11. Further, Mr. Houser asserts Labs "had no control over Gorilla's sale or distribution of the products it sold to Gorilla." *Id.* ¶ 12. Accordingly, Labs argues that it "simply placed products in the stream of commerce which, without more, is insufficient to establish purposeful availment." Labs Mem. at 9.

In response, Plaintiff first argues that purposeful availment exists here based on Labs' relationship with Gorilla. Opp'n at 11. Plaintiff contends that Labs "purposefully

availed itself of doing business in California when it agreed to manufacture and supply Green Tea Supplements to [Gorilla] who Labs knew to be a nationwide retailer of supplements." *Id.* Additionally, Plaintiff argues that "Labs is not simply a manufacturer with no control over the ultimate distribution of the product," because "Labs had control over the distribution of the Green Tea Supplements when it agreed to sell their products to a nationwide distributor, and did not limit the territorial reach of where [Gorilla] could sell Green Tea Supplements by contract or otherwise." *Id.* at 14.

      The Court is not persuaded that Labs entering into an agreement with Gorilla, a nationwide distributor, demonstrates anything more than the placement of a product into the stream of commerce, with the knowledge that it could potentially enter the forum state. And "for the placement of a product into the stream of commerce to count as purposeful availment, there needs to be some indication that [Defendant] made a deliberate effort to target the forum state." *Huntington v. Smoke City for Less LLC*, No. 4:22-CV-05014-MKD, 2023 WL 2996729, at *7 (E.D. Wash. Apr. 18, 2023) (citing *Yamashita*, 62 F.4th at 503). Plaintiff's argument that it did not limit the territorial reach of Gorilla is insufficient to demonstrate it made a "deliberate effort" to target California. *Huntington*, 2023 WL 2996729, at *7 (finding plaintiff failed to show more than "bare stream of commerce" where the plaintiff proffered no evidence that defendant sold consumer products directly to the forum state's residents or that it targeted the state when it sold its products to third parties). Rather, the Court finds merit in Labs' contention that "[t]he fact that Labs did *not* impose any distribution requirements or limitations evidences Labs' *lack* of control over Gorilla's distribution." Reply at 6 (emphasis in original).

      The Court notes that Plaintiff also suggests Labs had control over Gorilla because it "provided marketing services to Gorilla," which allowed Labs to "influence[] the final destination of their products." Opp'n at 13. However, Plaintiff cites no support for this contention. Assuming Plaintiff is referring to his proffered evidence that Gorilla stated in discovery responses that Labs was responsible for marketing Green Tea Supplements, *see* Opp'n at 7 (citing Defendant Gorilla Mind LLC's Response to Plaintiff's Special

Interrogatories, Set One, Exhibit A, ECF No. 33-2), Plaintiff has not explained, much less provided evidence demonstrating, how such marketing services "influenced" the destination of Gorilla's products. Accordingly, Plaintiff's allegations are insufficient to overcome Mr. Houser's Declaration that Labs "had no control over Gorilla's sale or distribution of the products it sold Gorilla." Houser Decl. ¶ 12; *see also* Second Houser Decl. ¶ 5 ("Labs did not have any input, influence, or control over how or where Gorilla distributed products [Labs] sold to Gorilla."); *Yamashita*, 62 F.4th at 502 ("[I]n the face of a contradictory affidavit, the plaintiff cannot simply rest on the bare allegations of its complaint." (internal quotation marks and citation omitted)).

Next, Plaintiff claims that "Labs had clear notice of [its] exposure to suits arising from California, which is why it signed an indemnity agreement with Gorilla . . . ." Opp'n at 14. Plaintiff argues that by entering into the indemnity agreement, "Labs contemplated the future consequences of supplying [Gorilla] with Green Tea Supplements" and "the fact that there would be end users of Green Tea Supplements who could potentially bring lawsuits related to Labs' products . . . ." *Id.*; *see also* Indemnification Agreement, ECF No. 33-2, Exhibit E. However, the referenced indemnification agreement is not geographic-specific and does not mention or discuss California. The Court is not persuaded that such a general agreement shows Labs "deliberately 'reached out beyond' its home—by, for example, 'exploiting a market' in the forum State or entering a contractual relationship centered there." *See Ford*, 592 U.S. at 359 (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (alterations omitted)).

Plaintiff also argues that purposeful availment is met based on Labs' California contacts. First, Plaintiff argues that Labs "admits at least 5% of its business—which operates *worldwide*—came from the state of California," citing to "Declaration of Marcos Lima ¶ 6." Opp'n at 15 (emphasis in original). However, no such declaration is attached to Labs' Motion or Plaintiff's Opposition; rather Plaintiff appears to be referencing the Declaration by Marcos Lima in Support of *Holdings'* Motion, where Mr. Lima attests that "[b]etween and including 2021 and 2024 to date, only 5.36% of *Nutracap Holdings'* total

sales came from the State of California." *See* Declaration of Maros Lima in Support of Nutracap Holdings, LLC's Motion to Dismiss Pursuant to FRCP 12(B)(2), ECF No. 28-2 ¶ 6 (emphasis added).

But plaintiff must make a prima facie showing that "each *entity defendant* purposefully availed itself of the benefit of doing business in the forum." *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 990 (E.D. Cal. 2012). As enunciated by the Ninth Circuit:

> Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff. In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.

*Sinatra v. National Enquirer,* 854 F.2d 1191, 1195 (9th Cir. 1988) (citations omitted). It goes unchallenged that Holdings and Labs are distinct entities. Houser Decl. ¶ 2. Plaintiff's allegations with respect to Holdings, thus, are insufficient to demonstrate affirmative conduct by Labs that allows or promotes the transaction of business within California.[2]

---

[2] The Court recognizes in some instances contacts by one entity may be imputed to another for the purposes of personal jurisdiction, such as under "alter ego" or "agency" theories of liability. *See Wehlage v. EmpRes Healthcare, Inc.,* 791 F. Supp. 2d 774, 782 (N.D. Cal. 2011) (citation omitted) (holding to avail themself of the alter ego doctrine, a plaintiff must allege two elements: "First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." (citation omitted)); *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (noting that while the Supreme Court "voided [the Ninth Circuit's] agency approach for imputing contacts for the purpose of general jurisdiction, it left open the question of whether an agency relationship might justify the exercise of specific jurisdiction"). However, Plaintiff does not raise any such theory, nor argue actions by Holdings should be imputed to Labs. Accordingly, the Court will not consider any purported contacts of Holdings to be imputed to Labs for the purposes of this Order. *See Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) ("Disregarding the corporate entity is recognized as an extreme remedy, and '[c]ourts will pierce the corporate veil only in exceptional circumstances.'" (citation omitted)).

Similarly, Plaintiff then asserts that "through Holdings, Labs itself has directly sold supplements and products to the residents of California through the brand MyoBlox." *Id.* at 15. And Plaintiff represents that, "[t]hrough Holdings, Labs is subject to a consent judgment that requires the company to take specific actions related to products known to be specifically targeted to California." *Id.* at 15–16.

However, Plaintiff's supporting Declaration does not demonstrate involvement by Labs. Rather his counsel avers only that Holdings sells products directly to California consumers through brands such as MyoBlox, and that Holdings entered into a consent agreement on August 24, 2024, in the California Superior Court of Alameda County. BenDavid Decl. ¶¶ 7–9. Such allegations are thus likewise insufficient to make a prima facie showing of purposeful availment as to Labs, a distinct entity defendant. *NuCal Foods, Inc*, 887 F. Supp. 2d at 990.

Plaintiff also states that "[i]ndirectly, Labs has sold products to California by entering into contracts with companies such as DBD [DTA Corporation] that have directly targeted California consumers." Opp'n at 16. And one of these brands, GenOne, Plaintiff represents in his Opposition, is owned by DBD and "manufactured by Labs," and is "actively marketed on Amazon with labels specifically designed to conform to California law under Proposition 65." *Id.* However, Plaintiff's supporting Declaration from his counsel appears to contradict these assertions, as Mr. BenDavid attests that Marcos Lima, Chief Operating Officer for *Holdings* owns DBD DTA Corporation ("DBD"), and that DBD has five brands, four of which promote supplements manufactured by *Holdings*. BenDavid Decl. ¶¶ 10–11. Similarly, Plaintiff references two recalls voluntarily issued by Holdings—not Labs—for products in California in November 2021, *see* Opp'n at 16, but provides no evidence as to why these demonstrate contacts by Labs, a distinct entity that

---

That said, the Court does not make any findings with respect to the existence of personal jurisdiction or lack thereof as to Holdings in this Order, in light of the automatic stay of this action against Holdings. And nothing in this Order should be construed as suggestive of the Court's thoughts as to whether Plaintiff has demonstrated personal jurisdiction exists over Holdings.

had ceased to operate as a manufacturing, distributing, and selling entity at such time.

Again, these allegations are insufficient to establish Labs made deliberate efforts to avail itself of the privilege of doing business in California. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *see also Ford*, 592 U.S. at 359 (The "contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" (citation omitted)).

And in any event, the Court is persuaded by Labs that Plaintiff's argument "merely shows an 'awareness that the stream of commerce may or will sweep the product into the forum State,'" Reply at 7 (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Ca., Solano Cnty.*, 480 U.S. 102, 112 (1987)), which is insufficient to establish the requisite targeting. Furthermore, Plaintiff has not demonstrated any additional conduct by Labs, such as it "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112. Plaintiff's stance is merely that Labs *indirectly* sold the products. Thus, purposeful availment is not met.

Based on the Parties' arguments, the Court finds that Labs did not purposefully avail itself of the privilege of doing business in California. Therefore, Plaintiff has not met his burden of proving the first prong of the test for specific jurisdiction, based on the purposeful availment test. Although this case fits within those that are typically considered through a purposeful availment analysis, the Court also considers purposeful direction to "comprehensively evaluate" the extent of Labs' contacts with the forum state. *See Davis*, 71 F.4th at 1162.

      b.    Purposeful Direction

A showing "that a defendant [purposefully] *directed* [its] conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that

are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Schwarzenegger*, 374 F.3d at 803(emphasis added). When conducting a purposeful direction analysis, courts take into consideration the *Calder* "effects" test which requires a plaintiff to establish that the defendant:

> (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm the defendant knows is likely to be suffered in the forum state.

*Id.* (citing *Dole Food Co.*, 303 F.3d at 1111).

In its Motion, Labs contends that any claim of personal jurisdiction based on purposeful direction must fail because it "simply placed Gorilla products into the stream of commerce with no direct sale to Plaintiff or any other California resident." Labs Mem. at 9 (citing Houser Decl. ¶¶ 8–9). Labs also asserts that it "exercised no control over where Gorilla sold or distributed the product." *Id.* (citing Houser Decl. ¶ 12).

In his Opposition, Plaintiff appears to set forth a purposeful direction analysis as a means of furthering his purposeful availment analysis. Plaintiff turns to *Herbal Brands*, where the court held that "if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant has purposefully directed its conduct at the forum such that the exercise of personal jurisdiction may be appropriate." 72 F.4th at 1088. When conducting a purposeful direction analysis in this specific context, the test set forth by the court in *Herbal Brands* asks whether (1) the sale was part of the defendant's regular course of business instead of being random and isolated and (2) the defendant exercised some level of control over the ultimate distribution of its product. *Id.* at 1094.

Plaintiff's position is that "the sale of products manufactured by Labs in California was part of Labs' normal course of business." Opp'n at 12. In support of this, Plaintiff states that "Labs is a supplement manufacturer that advertises itself as a wholesale supplier of supplements and offers an interactive website where retailers can exchange information with Labs." *Id.* at 13. Plaintiff also states that "Labs supplied [Gorilla] with at least 65,000

bottles of Green Tea Supplements as part of the normal course of their business selling supplements at a wholesale price . . . ." *Id*. Further, Plaintiff contends that "Labs manufactured these products with the clear knowledge and understanding that the products would be sold nationally" because "this is not a volume that can be reasonably anticipated to be sold in just a single state." *Id.*

There are several problems with this argument. First, the website referred to appears to be that of Holdings, not Labs. *See* BenDavid Decl. ¶ 4. Next, it was Gorilla, not Labs, that sold Gorilla Products to consumers and caused the products to be delivered to the forum. *See* Houser Decl. ¶¶ 8–9 ("Labs did not sell or ship Gorilla Products to Plaintiff in California or otherwise ship or sell Gorilla Products to California at all . . . it did not sell any products manufactured for Gorilla direct to consumers, as any and all products manufactured by [Labs] for Gorilla were sold solely to Gorilla and shipped directly to Gorilla in Idaho."). Finally, as explained above, the Court is not persuaded that Labs exercised some level of control over the ultimate distribution of Gorilla Products because it "did not limit the territorial reach" of Gorilla's sales and signed general and non-geographic specific indemnity agreements with Gorilla. *See* Opp'n at 14. Nor is the Court swayed by Plaintiff's unsupported contention that Labs "provided marketing services to [Gorilla] which allowed Labs to exercise control over marketing decisions and further influenced the final destination of their products," *id.* at 13, in light of Labs' sworn Declaration to the contrary, *see* Second Houser Decl. ¶¶ 2–5 ("Labs did not control the marketing decisions of Gorilla. . . . Labs did not have any input, influence, or control over how or where Gorilla distributed products Nutracap Labs sold to Gorilla."). Rather, as explained above, Plaintiff has only demonstrated Labs placed products into the stream of commerce, which is insufficient to establish purposeful direction. *Herbal Brands*, 72 F.4th at 1094.

Accordingly, Plaintiff has not established purposeful direction as an independent analysis, nor as Plaintiff frames it as supporting that Labs purposefully availed itself of the privilege of conducting business in California. Therefore, Plaintiff has not met his burden

of demonstrating that the first prong for specific jurisdiction has been met.

### 2. *Relatedness*

Plaintiff has neither shown that Labs purposefully availed itself of the privileges of conducting business in California, nor that it purposefully directed its activities to the forum state. Nonetheless, the Court addresses Plaintiff's argument that "a strong showing on the relatedness prong allows for a lesser showing on the availment prong and vice versa." Opp'n at 16–17 (citing *Yahoo! Inc. v. La Ligue Contre La Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006)). In *Yahoo!*, the Ninth Circuit stated that, "[a] single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." *Yahoo!*, 433 F.3d at 1210 (internal quotations and citations omitted) (cleaned up).

Here, Plaintiff has not demonstrated any particular purposeful contact by Labs with California. Rather, as explained above, Plaintiff has only alleged actions by Labs that constitute a bare stream of commerce. Accordingly, as Plaintiff failed to satisfy the first prong, personal jurisdiction is not established in the forum state. *Schwarzenegger*, 374 F.3d at 802.

### 3. *Fair Play and Substantial Justice*

The burden of proving that the third prong of the test for specific jurisdiction, or that exercise of jurisdiction would not be reasonable, shifts to a defendant, after a plaintiff has met their burden of demonstrating the first two prongs. *Id*. Given that Plaintiff has not met his burden here, the issue of whether Labs is subject to this Court's personal jurisdiction can be disposed of based on the first two prongs.

For the above reasons, Labs is not subject to personal jurisdiction in California. Consequently, the Court **GRANTS** Labs' Motion to Dismiss (ECF No. 29).

### 4. *Plaintiff's Request for Jurisdictional Discovery*

In the alternative, Plaintiff requests that the Court grant him jurisdictional discovery. Jurisdictional discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts

is necessary." *Butcher's Union Loc. No. 498 v. SDC Invest., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (citations and internal quotation marks omitted). A mere "hunch that [discovery] might yield jurisdictionally relevant facts," or "bare allegations in the face of specific denials" are insufficient reasons for a court to grant jurisdictional discovery. *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 865 (9th Cir. 2022) (internal citations omitted).

Plaintiff argues jurisdictional discovery is appropriate as he has controverted facts stated by Labs "by more than mere allegations." Opp'n at 21. First, Plaintiff indicates that Mr. Houser's statements that "Labs does not direct any advertising towards citizens of California," is controverted by Plaintiff's counsel's Declaration that Plaintiff's counsel, in California, viewed a Holdings advertisement on Youtube.com after "spending a short amount of time Googling and researching Nutracap." *Id.*; *see also* BenDavid Decl. ¶ 5. The Court is not persuaded that Plaintiff's counsel's receipt of an advertisement by *Holdings*, a distinct entity, controverts Mr. Houser's denials that *Labs* directs advertising towards the citizens of California.

Next, Plaintiff argues Mr. Houser's statements that Labs "did not advertise products manufactured for Gorilla in California or elsewhere[,]" and later that Labs "had no control over Gorilla's sale or distribution of the products it sold to Gorilla[,]" are "directly contradicted by statements of [Gorilla] in verified discovery responses, as well as the agreements produced by [Gorilla] between Labs and Gorilla." Opp'n at 21. Plaintiff does not cite to what statements he refers, and the Court is unable to identify the purported contradiction. For instance, nothing in the sales agreement between Gorilla and Labs addresses Gorilla's sale or distribution of products manufactured for it, much less give Labs control thereof. *See* Gorilla Mind & Nutracap Supplier Agreement, Exhibit B, ECF No. 33-2 at 6–9.[3] And notably, Gorilla's Response to Plaintiff's Interrogatory No. 3 asserts

---

[3] Pin citations to this docket entry refer to the CM/ECF page numbers stamped across the top margin of each page.

that Gorilla has no common ownership or control with Labs. *See* Defendant Gorilla Mind LLC's Response to Plaintiff's Special Interrogatories, Set One, Exhibit A, ECF No. 33-2 at 2. While the discovery responses from Gorilla indicate that Labs provided marketing services for Gorilla, *id.*, the Court does not find this controverts Mr. Houser's statement or any pertinent fact, as Mr. Houser attests that Labs did not control the marketing decisions of Gorilla and none of the advertisements with which Labs was involved targeted California, *see* Second Houser Decl. ¶¶ 3–4 ("The marketing services provided by [Labs] to Gorilla involved Gorilla's Facebook advertisements and Gorilla made the final decision as to and controlled what was ultimately posted on Facebook . . . [and] [n]one of the Facebook advertisements with which [Labs] was involved targeted California.").

Finally, Plaintiff contends he is entitled to discovery of evidence of Labs' marketing and sales to entities unknown to Plaintiff like MyoBlox, or "indirectly through retailers like DBD or any of the other 60 brands from the list of products recalled in California by Labs, and whether or not any of those products contain green tea or EGCG." Opp'n at 22. However, this argument fails, as explained above, because as stated by Plaintiff's counsel in his sworn Declaration, it was in fact *Holdings* that issued recalls, *see* BenDavid Decl. ¶¶ 13–14, *Holdings* that does business as MyoBlox, *see id.* ¶¶ 7–9, and *Holdings* that manufactures supplements promoted by DBD's five brands, *see id.* ¶ 11.

Plaintiff has not provided evidence of any deliberate efforts by Labs to target California and has failed to controvert Labs' supporting Declarations that Labs ceased its manufacturing, distributing, and selling operations in November 2020, *id.* ¶ 3, performed no business activity as to Gorilla Products in California, *id.* ¶ 10, had no control over Gorilla's sale or distribution of the products it sold Gorilla, *id.* ¶ 12, had no contracts with supplement retailers or providers involving the targeting of California consumers, Second Houser Decl. ¶ 7, and its sales and marketing did not target California, *id.* ¶ 9. Accordingly, the Court finds Plaintiff has not demonstrated that any "pertinent facts bearing on the question of jurisdiction are controverted." *Butcher's Union*, 788 F.2d at 540. Thus, the Court **DENIES** Plaintiff's request for jurisdictional discovery.

### III. Conclusion

For the reasons stated above, the Court **GRANTS** Defendant's Motion (ECF No. 29) and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against Labs. Additionally, the Court **DENIES** Plaintiff's request for jurisdictional discovery.

### HOLDINGS' MOTION TO DISMISS

On January 15, 2025, Holdings filed a Notice of Bankruptcy Filing and Automatic Stay as to Nutracap Holdings (ECF No. 39), notifying the Court that Holdings had "filed a Chapter 11 bankruptcy petition seeking relief under Title 11, United States Code to the United States Bankruptcy Court for the Northern District of Georgia," under case number 25-50430. Bankr. Notice ¶¶ 1–2. Because Holdings filed a Chapter 11 bankruptcy, the action against Holdings is stayed pursuant to 11 U.S.C. § 362. *See In re Tuscon Ests., Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990) ("A bankruptcy filing imposes an automatic stay of all litigation against the debtor." (citing 11 U.S.C. § 362(a)). As for Holdings' codefendants in this action, as a general rule, "section 362(a) does not stay actions against . . . non-debtor parties liable on the debts of the debtor." *In re Chugach Forrest Prods., Inc.*, 23 F.3d 241, 246 (9th Cir. 1994).

Because this action as to Holdings is now stayed, Holdings' pending motions cannot proceed unless and until the automatic stay is lifted. *See e.g.*, *McCarley v. Stout Ins. Co., LLC*, No. 2:24-cv-001697-CDS-MDC, 2024 WL 4956583, at *1 (D. Nev. Dec. 3, 2024). Consequently, Holdings' Motion to Dismiss for Lack of Jurisdiction (ECF No. 28) is **DENIED WITHOUT PREJUDICE**.

### CONCLUSION

In light of the foregoing, the Court **ORDERS** as follows:

1. Labs' Motion to Dismiss for Lack of Jurisdiction (ECF No. 29) is **GRANTED**. Plaintiff's request for jurisdictional discovery is **DENIED**.

2. Plaintiff's claims against Labs are **DISMISSED WITHOUT PREJUDICE**.

3. This action as to Holdings is **STAYED** pursuant to 11 U.S.C. § 362.

///

Therefore, Holdings' Motion to Dismiss for Lack of Jurisdiction (ECF No. 28) is **DENIED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

Dated: April 29, 2025

Hon. Janis L. Sammartino
United States District Judge